**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| _____ ) | |
| UNITED STATES OF AMERICA and ) | |
| The STATE OF INDIANA ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 3:20-cv-202 |
| ) | |
| v. ) | |
| ) | |
| INDIANAPOLIS POWER & LIGHT ) | |
| COMPANY ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United

States and through the undersigned attorneys, acting at the request of the Administrator of the

United States Environmental Protection Agency (EPA), and the State of Indiana (State), by the

authority of the Attorney General of Indiana, acting at the request of the Indiana Department of

Environmental Management (IDEM) (collectively, Plaintiffs), allege as follows:

### NATURE OF THE ACTION

1.      This is a civil action brought against Indianapolis Power & Light Company

(Defendant or IPL) for violations of the Clean Air Act (CAA or Act), 42 U.S.C. §§ 7401 *et seq.*,

at the Petersburg Generating Station (Petersburg Station) in Pike County, Indiana.  Pursuant to

Sections 113(b)(2) and 167 of the CAA, 42 U.S.C. §§ 7413(b)(2) and 7477, and 326 Indiana

Administrative Code (IAC) Sections 2 and 5, the United States and the State seek injunctive

relief and the assessment of civil penalties for violations of: (a) the Prevention of Significant

Deterioration (PSD) provisions of the Act, 42 U.S.C. §§ 7470-7492; (b) the nonattainment New

Source Review (Nonattainment NSR) provisions of the Act, 42 U.S.C. §§ 7501-7515; (c) the New Source Performance Standards (NSPS) of the Act, 42 U.S.C. § 7411; (d) the requirements of Title V of the Act, 42 U.S.C. §§ 7661-7661f, and (e) the federally enforceable Indiana State Implementation Plan (Indiana SIP).

2.     At various times relevant to this Complaint, Defendant modified coal-fired units at the Petersburg Station and failed to obtain the necessary permits and install the controls necessary under the Act to reduce emissions of sulfur dioxide ($SO_2$), nitrogen oxides ($NO_X$), particulate matter (PM) and sulfuric acid mist ($H_2SO_4$), that such emissions damage human health and the environment, and that, as a result of Defendant's actions, Defendant violated and continues to violate the PSD provisions of the Act, 42 U.S.C. § 7475, and the Nonattainment NSR provisions of the Act, 42 U.S.C. §§ 7501-7515.

3.     At various times relevant to this Complaint, Defendant violated, and continues to violate, the Indiana SIP, the NSPS and/or its Title V Permit by exceeding opacity limitations and emitting $SO_2$ in excess of the applicable $SO_2$ limits.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction of the subject matter of this action pursuant to Sections 113(b) and 167 of the Act, 42 U.S.C. §§ 7413(b) and 7477, and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

5.     Venue is proper in this District pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because the violations occurred and are occurring in this District, the Petersburg Station is operated by Defendant in this District, and Defendant resides in this District.

6.     This Court has supplemental jurisdiction over the State law claims asserted by Indiana pursuant to 28 U.S.C. § 1367(a), because the State claims are related to the federal claims and form part of the same case or controversy.

## NOTICES

7.     On September 29, 2009, EPA issued a Notice of Violation (NOV) to IPL pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), alleging violations of the Act at the Petersburg Station (and two other IPL generating stations not relevant to this Complaint), including the PSD provisions in Part C of Subchapter I of the Act, 42 U.S.C. § 7475, 40 C.F.R. § 52.21; the federally enforceable Indiana SIP, including 326 IAC 2-2-2(c) and 2-7; and Title V of the Act, 42 U.S.C. §§ 7661-7661f.

8.     On September 23, 2015, EPA issued an NOV to IPL pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), alleging violations of the Act at the Petersburg Station, including the NSPS at 42 U.S.C. § 7411 and 40 C.F.R. § 60.42(a)(2); the federally enforceable Indiana SIP, including 326 IAC 5-1-2; and the Petersburg Station's Title V Operating Permit issued by IDEM, Section C.2.

9.     On February 5, 2016, EPA issued an NOV to IPL pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a), alleging violations of the Act at the Petersburg Station, including the PSD provisions in Part C of Subchapter I of the Act, 42 U.S.C. § 7475, 40 C.F.R. § 52.21; the Nonattainment NSR requirements in Part D of Subchapter I of the Act, 42 U.S.C. §§ 7501-7515; Title V of the Act, 42 U.S.C. §§ 7661-7661f.; the NSPS at 42 U.S.C. § 7411 and 40 C.F.R. §§ 60.42(a)(2) and 60.43(a)(2); and the federally enforceable Indiana SIP, including 326 IAC 2-2-2(c), 2-2-8(b), 2-3 and 5-1-2.

10. EPA provided copies of these Notices to the State, as required by Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1).

## AUTHORITY

11. Authority to bring this action is vested in the Attorney General of the United States by CAA Section 305, 42 U.S.C. § 7605, and pursuant to 28 U.S.C. §§ 516 and 519.

12. Authority to bring this action for the People of the State of Indiana is vested in the Indiana Attorney General. The Indiana Attorney General is the chief legal officer of the State of Indiana having the powers and duties prescribed by the law, Ind. Code (IC) § 4-6-1-6. Pursuant to IC § 13-13-5-1, IDEM is charged with the administration and enforcement of the requirements for air pollution for Indiana for all purposes of the CAA.

## THE DEFENDANT

13. Defendant is an Indiana corporation and a subsidiary of AES Corporation.

14. Defendant owns and operates the Petersburg Station (Facility) located in Pike County, Indiana. The Facility is a fossil fuel-fired steam electric plant, consisting of four coal-fired boilers and corresponding turbines for electricity generation. Units 1 through 4 have net generating capacities of 229, 412, 540, and 530 megawatts and commenced construction in 1964, 1969, 1977, and 1978, respectively. Units 1 through 4 are "electric utility steam generating units" as that term is used in the Act and the Indiana SIP. See Section 112(a)(8) of the Act, 42 U.S.C. § 7412(a)(8), and 326 IAC 2-2-1(t), respectively.

15. Defendant is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

## STATUTORY AND REGULATORY BACKGROUND

**National Ambient Air Quality Standards**

16.     Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of EPA to promulgate regulations establishing primary and secondary national ambient air quality standards (NAAQS) for those air pollutants for which air quality criteria have been issued pursuant to Section 108 of the Act, 42 U.S.C. § 7408.  The primary NAAQS are to be adequate to protect the public health with an adequate margin of safety, and the secondary NAAQS are to be adequate to protect the public welfare from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.

17.     Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data.  An area that meets the NAAQS for a particular pollutant is an "attainment" area.  An area that does not meet the NAAQS is a "nonattainment" area.  An area that cannot be classified due to insufficient data is "unclassifiable."

18.     The Facility is located in an area classified as in attainment for $NO_X$ and PM for all time periods relevant to the alleged violations in this Complaint, and for $SO_2$ for time periods prior to and including October 4, 2013.  From October 5, 2013, to present, the Facility is located in an area designated as nonattainment for $SO_2$, and has been determined to be a "significant contributor" to the Pike County $SO_2$ NAAQs exceedance.

19.     Pursuant to 42 U.S.C. § 7410, each State must adopt and submit to EPA for approval a SIP that provides for the attainment, maintenance, and enforcement of the NAAQS. Under Section 110(a)(2) of the CAA, 42 U.S.C. § 7410(a)(2), each SIP must include a permit

program to regulate the modification and construction of any stationary source of air pollution as necessary to assure that NAAQS are achieved.

**New Source Performance Standards**

20.     Section 111(b)(1) of the CAA, 42 U.S.C. § 7411(b)(1), requires EPA to:  (a) publish a list of categories of stationary sources that, in its judgment, cause or contribute significantly to air pollution that may reasonably be anticipated to endanger the public health or welfare; and (b) promulgate standards of performance for new sources within those categories. These standards, commonly known as the New Source Performance Standards, or NSPS, are codified at 40 C.F.R. Part 60.

21.     "New source" is defined as a stationary source, the construction or modification of which is commenced after the publication of the regulations (or, if earlier, proposed regulations) prescribing a standard of performance applicable to such source.  42 U.S.C. § 7411(a)(2).  "Stationary source" is defined as any "building, structure, facility, or installation which emits or may emit any air pollutant."  42 U.S.C. § 7411(a)(3).

22.     Section 111(e) of the CAA, 42 U.S.C. § 7411(e), prohibits an owner or operator of a new source from operating any new (i.e., constructed or modified) source in violation of an NSPS after the effective date of the NSPS applicable to such source.

23.     Pursuant to Section 111 of the Act, 42 U.S.C. § 7411, EPA promulgated 40 C.F.R. Part 60, subpart D.  This includes § 60.42(a)(2), which states that "no owner or operator subject to the provision of this subpart shall cause to be discharged into the atmosphere from any affected facility any gases that exhibit greater than 20 percent opacity except for one six-minute period per hour of not more than 27 percent opacity."

24.     Pursuant to 40 C.F.R. § 60.43(a)(2), "no owner or operator subject to the provisions of this subpart shall cause to be discharged into the atmosphere from any affected facility any gases that contain $SO_2$ in excess of … 520 ng/J heat input (1.2 lb/MMBtu) derived from solid fossil fuel or solid fossil fuel and wood residue, except as provided in paragraph (e) of this section."

**Indiana State Implementation Plan**

25.     Pursuant to Section 110 of the Act, 42 U.S.C. § 7410, EPA approved 326 IAC 5-1 (Opacity Limitations), as part of the federally enforceable Indiana SIP for PM.

26.     326 IAC 5-1-2 states that, unless otherwise noted, opacity shall meet the following limitations: (A) Opacity shall not exceed an average of 40 percent in any one six-minute averaging period, and (B) Opacity shall not exceed 60 percent for more than a cumulative total of 15 minutes in a six-hour period.

**Prevention of Significant Deterioration Requirements**

27.     Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration of air quality in those areas designated as either attainment or unclassifiable for purposes of meeting the NAAQS.  These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation in the decision making process. These provisions are referred to herein as the "PSD program."

28.     Pursuant to CAA Section 110, 42 U.S.C. § 7410, each State must adopt and submit to EPA for approval a SIP that includes, among other things, regulations to prevent the significant deterioration of air quality under CAA Sections 161-165, 42 U.S.C. §§ 7471-7475.

29.     Upon EPA approval, state SIP requirements are federally enforceable under CAA Section 113, 42 U.S.C. § 7413(a), (b), and 40 C.F.R. § 52.23.

30.     A state may comply with Section 161 of the Act by having its own PSD regulations approved by EPA as part of its SIP, which must be at least as stringent as those set forth at 40 C.F.R. § 51.166.

31.     If a state does not have a PSD program that has been approved by EPA and incorporated into the SIP, the federal PSD regulations set forth at 40 C.F.R. § 52.21 shall be incorporated by reference into the SIP.  40 C.F.R. § 52.21(a).[1]

32.     On August 7, 1980, EPA disapproved Indiana's proposed PSD program and incorporated by reference the provisions of 40 C.F.R. § 52.21(b) through (w) into the Indiana SIP at 40 C.F.R. § 52.793.  45 Fed. Reg. 52,676, 52,741 (Aug. 7, 1980).  In 2003, EPA conditionally approved Indiana's PSD SIP provisions, found at 326 IAC 2-2.  68 Fed. Reg. 9892 (Mar. 3, 2003).  Indiana subsequently revised portions of its PSD SIP regulations, and those revisions were approved by EPA effective July 18, 2007.  72 Fed. Reg. 33395 (June 18, 2007).

33.     Section 165(a) of the Act, 42 U.S.C. § 7475(a), among other things, prohibits the construction and operation of a "major emitting facility" in an attainment area unless a permit has been issued that comports with the requirements of Section 165 and the facility employs Best

---

[1] There are several sets of federal regulations that apply to different aspects of the PSD/NSR program.  In addition, the state regulations apply in some circumstances, while in other circumstances earlier versions of the federal rules applied at the time of the modification.  The substance of the provisions is generally the same across the different regulations.  In general, this Complaint cites to 40 C.F.R. § 52.21 for convenience.

Available Control Technology (BACT) for each pollutant subject to regulation under the Act that is emitted from the facility.  Section 169(1) of the Act, 42 U.S.C. § 7479(1), designates fossil fuel fired steam electric plants of more than two hundred and fifty million British thermal units (BTUs) per hour heat input and that emit or have the potential to emit one hundred tons per year or more of any regulated pollutant to be "major emitting facilities."  Under the PSD program, a "major stationary source" is defined to include fossil fueled steam electric generating plants of more than 250 million BTUs per hour heat input that emit, or have the potential to emit, one hundred tons per year or more of any regulated air pollutant.  40 C.F.R. § 51.166(b)(1)(i)(a); 326 IAC 2-2-1(ff).

34.     Section 169(2)(c) of the Act, 42 U.S.C. § 7479(2)(C), defines "construction" as including "modification" (as defined in Section 111(a) of the Act).  "Modification" is defined in Section 111(a) of the Act, 42 U.S.C. § 7411(a)(4), to be "any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted."

35.     "Major modification" is defined at 40 C.F.R. § 52.21(b)(2)(i) as "any physical change in or change in method of operation of a major stationary source that would result in "a significant emissions increase and a significant net emissions increase of a regulated pollutant." See 326 IAC 2-2-1(dd).

36.     A "significant emissions increase" occurs when the difference between "baseline actual emissions" before the physical change, as defined by 40 C.F.R. § 52.21(b)(48)(i), and "projected actual emissions" for the period after the physical change, as defined by 40 C.F.R. § 52.21(b)(41), exceeds the significance threshold for the pollutant at issue.  40 C.F.R. §

52.21(a)(2)(iv)(c).  A "net emissions increase" is the difference between the emissions increase calculated as required by 40 C.F.R. § 52.21(a)(2)(iv)(c) and any other increases or decreases allowed in the netting process under 40 C.F.R. § 52.21(b)(3).  Such an increase is "significant" if it exceeds the significance threshold for the pollutant at issue.  The relevant significance thresholds in this case are:  40 tons per year of $SO_2$; 40 tons per year of $NO_X$; 25 tons per year of PM; and 7 tons per year of $H_2SO_4$.  40 C.F.R. § 52.21(b)(23)(i); 326 IAC 2-2-1(ww).  Effective July 15, 2008, $SO_2$ is regulated as a precursor to $PM_{2.5}$.  73 Fed. Reg. 28321, 28327-28 (May 16, 2008).

37.    A "major modification" also occurs where actual emissions data after the completion of the physical change shows a net emissions increase and a significant net emissions increase.  40 C.F.R. § 52.21(a)(2)(iv)(b); 57 Fed. Reg. 32,314, 32,325.

38.    Applicable provisions in the PSD regulations in the Indiana SIP, codified in the Indiana Administrative Code at Title 326 IAC Article 2, Rule 2, prohibit a major stationary source from constructing a major modification in an area designated as unclassifiable or in attainment without, among other things, obtaining a PSD permit, undergoing a BACT determination, and applying BACT pursuant to such determination for each relevant pollutant.

39.    As set forth at 42 U.S.C. § 7475(a)(4) and 40 C.F.R. § 52.21(j), a source with a major modification in an attainment or unclassifiable area must install and operate BACT, as defined in 42 U.S.C. § 7479(3) and 40 C.F.R. § 52.21(b)(12), where the modification would result in a significant net emissions increase of a pollutant subject to regulation under the Act. 42 U.S.C. § 7475(a)(4).

40.    BACT, in pertinent part, is "an emission limitation based on the maximum degree of reduction of each pollutant subject to regulation under this chapter emitted from or which

results from any major emitting facility which the permitting authority, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs, determines is achievable for such facility. . . ."  Section 169(3) of the Act, 42 U.S.C. § 7479(3).

**Nonattainment New Source Review Requirements**

41.     Part D of Title I of the CAA, 42 U.S.C. §§ 7501-7515, sets forth provisions for New Source Review requirements for areas designated as nonattainment for purposes of meeting the NAAQS standards.  These provisions are referred to herein as "Nonattainment NSR."  The Nonattainment NSR program is intended to reduce emissions of air pollutants in areas that have not met the NAAQS so that the areas make progress towards meeting the NAAQS.

42.     Under Section 172(c)(5) of the Nonattainment NSR provisions of the CAA, 42 U.S.C. § 7502(c)(5), a state is required to adopt Nonattainment NSR SIP rules that include provisions that require that all permits for the construction and operation of modified major stationary sources within nonattainment areas conform to the requirements of Section 173 of the CAA, 42 U.S.C. § 7503.  Section 173 of the CAA, in turn, sets forth a series of requirements for the issuance of permits for major modifications to major stationary sources within nonattainment areas.  42 U.S.C. § 7503.

43.     Pursuant to Section 173 of the Act, 42 U.S.C. § 7503, 40 C.F.R. § 51 Appendix S, if a major stationary source located in a nonattainment area is planning to make a major modification, that source must obtain a Nonattainment NSR permit before beginning actual construction.  To obtain this permit, the source must, among other things, employ pollution controls that reflect the Lowest Achievable Emission Rate (LAER).  See 326 IAC 2-3.

44.     LAER, in pertinent part, is "the most stringent emissions limitation which is contained in [any SIP] for such class or category of sources, unless . . . the proposed source

demonstrates that such limitations are not achievable, or . . . which is achieved in practice by such class or category of source, whichever is more stringent."  42 U.S.C. § 7501(3).

45.    Though Nonattainment NSR is a preconstruction permitting program, the CAA, the implementing regulations, and the Indiana SIP establish requirements for the lawful operation of the source following a modification.

**Title V Permits**

46.    "Title V" of the CAA, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources" and any source required to have a PSD permit. 42 U.S.C. § 7661a(a).  EPA's regulations implementing the Title V permit program are set forth in 40 C.F.R. Part 70 (State Operating Permit Programs).

47.    It is unlawful for any person to violate any requirement of a permit issued under Title V or to operate a major source except in compliance with a permit issued by a permitting authority under Title V.  42 U.S.C. § 7661a(a).

48.    EPA promulgated full approval of Indiana's Title V Program on December 4, 2001.  Indiana's Title V program became effective on November 20, 2001.  66 Fed. Reg. 62969.

49.    The Indiana regulations governing the Title V permitting program are codified at 326 IAC 2-7.

50.    IDEM issued a Title V Operation Permit to IPL for the Facility on December 22, 2008 and July 18, 2013 (Permit #s T 125 6565-00002 and T 125-30045-00002, respectively). Additionally, IDEM issued a Second Significant Permit Modification (Tl 25-34687-00002) on June 18, 2015. The permit contains the following relevant provisions for purposes of this Complaint:

a.  Section C.2 – Opacity: Pursuant to 326 IAC 5-1-2 (Opacity Limitations), except as provided in 326 IAC (Temporary Alternative Opacity Limitations), "opacity shall meet the following, unless otherwise stated in this permit: (a) Opacity shall not exceed an average of forty percent (40%) in any one (1) six (6) minute averaging period as determined in 326 IAC 5-1-4. (b) Opacity shall not exceed sixty percent (60%) for more than a cumulative total of fifteen (15) minutes in a six (6) hour period."

b.  Section D.1.2 - Startup, Shutdown, and Other Opacity Limits. "(a) Pursuant to 326 IAC 5-1-13(e) (Temporary Alternative Opacity Limitations), the following applies to Units 1 and 2: (1)  When building a new fire in a boiler, opacity may exceed the applicable limitation stablished in 326 IAC 5-1-2 for a period not to exceed a total of four (4) hours (forty (40) six (6)-minute averaging periods) during the startup period, or until the flue gas temperature entering the PM control device reaches two hundred and fifty (250) degrees Fahrenheit at the inlet to the electrostatic precipitator for Unit 1 and the inlet of the electrostatic precipitator or inlet of the baghouse for Unit 2, whichever occurs first.  For Unit 1, compliance with the opacity limit is determined by adding the Unit 1 Scrubbed and Unit 1 Bypass stacks' opacity exceedances during the startup period.  For Unit 2, compliance with the opacity limit is determined by adding the Unit 2 Scrubbed and Unit 2 Bypass stacks' opacity exceedances during the startup period. (2) When shutting down a boiler, opacity may exceed the applicable limitation established in 326 IAC 5-1-2 for a period not to exceed a total of two (2) hours (twenty (20) six (6)-minute averaging periods) during the shutdown period. (3) Operation of the electrostatic precipitators are not required during these times. (b)

When removing ashes from the fuel bed or furnace in a boiler or blowing tubes, opacity may exceed the applicable limit established in 326 IAC 5-1-2.  However, opacity levels shall not exceed sixty percent (60%) for any six (6)-minute averaging period and opacity in excess of the applicable limit shall not continue for more than one (1) six (6)-minute averaging period in any sixty (60) minute period. The averaging periods shall not be permitted for more than three (3) six (6)-minute averaging periods in a twelve (12) hour period. [326 IAC 5-1-3(b)]. (c)If a facility cannot meet the opacity limitations in (a) and (b) of this condition, the Permittee may submit a written request to IDEM, OAQ, for a temporary alternative opacity limitation in accordance with 326 IAC 5-1-3(d). The Permittee must demonstrate that the alternative limit is needed and justifiable. (d)This provision, D.1.2, shall no longer apply after PM CEMS is installed, certified, and operating to measure PM emissions pursuant to this permit."

c.  Section D.2.2(a)(2) - NSPS Subpart D, 326 IAC 12: "Pursuant to 326 IAC 12 and 40 C.F.R. Part 60, Subpart D, emissions from Unit 3 and Unit 4 shall not exceed the following: (a)(2) twenty percent (20%) opacity except for one six-minute period per hour of not more than twenty-seven percent (27%) opacity. [40 C.F.R. 60.42(a)(2)] Pursuant to 40 C.F.R. 60.1 l(c), this opacity standard is not applicable during periods of startup, shutdown, or malfunction."

d.  Section D.2.2 (b )(2) - NSPS Subpart D, 326 IAC 12: "Pursuant to 326 IAC 12 and 40 C.F.R. Part 60, Subpart D, emissions from Unit 3 and Unit 4 shall not exceed the following: (b )(2) one and two-tenths (1.2) pounds $SO_2$ per million Btu (MMBtu) heat input derived from solid fossil fuel."

e.  Section D.2.3 (a) - Pursuant to 326 IAC 2-2-3 (PSD BACT), the following

requirement shall apply to Unit 4: (a) $SO_2$ emissions shall not exceed 1.2 pounds per

MMBtu heat input when burning coal.

**ENFORCEMENT PROVISIONS**

51.  Section 113(a)(1) and (3) of the Act, 42 U.S.C. § 7413(a)(1) and (3), provides that

the Administrator may bring a civil action in accordance with Section 113(b) of the Act

whenever, on the basis of any information available, the Administrator finds that any person has

violated or is in violation of any regulation promulgated pursuant to Section 111 of the CAA;

any other requirement or prohibition of, *inter alia*, the PSD, Nonattainment NSR, or Title V

requirements of the Act, or any rule or permit issued thereunder; or the provisions of any

approved SIP or any permit issued thereunder.

52.  Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the Court to enjoin a

violation, to require compliance, to assess a civil penalty, and to award any other appropriate

relief for each violation.

53.  Section 113(b) of the CAA, 42 U.S.C. § 7413(b), also authorizes EPA to initiate a

judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of

not more than $25,000 per day for each violation of the CAA or regulation promulgated or

violation of a permit issued thereunder including state-issued permits pursuant to EPA-approved

SIPs and Title V permits.  This statutory maximum civil penalty has been increased to reflect

inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act (28 U.S.C. § 2461), as

amended, to $37,500 per day for each such violation occurring on or after January 12, 2009,

through November 2, 2015, and $101,439 per day per violation for each violation occurring after

November 2, 2015, and assessed on or after January 13, 2020.  *See* 85 Fed. Reg. 1755 (Jan. 13, 2020), codified at 40 C.F.R. Part 19.

54.     40 C.F.R. § 52.23 provides, *inter alia*, that any failure by a person to comply with any provision of 40 C.F.R. Part 52, or with any approved regulatory provision of a SIP, shall render such person in violation of the applicable SIP, and subject to enforcement action pursuant to Section 113 of the Act, 42 U.S.C. §7413.

55.     Section 167 of the Act, 42 U.S.C. § 7477, authorizes EPA to initiate an action for injunctive relief as necessary to prevent the construction, modification, or operation of a major emitting facility which does not conform to the PSD requirements in Part C of Title I of the Act.

**GENERAL ALLEGATIONS**

56.     At all times relevant to this Complaint, Defendant was the owner and/or operator of the Facility and continues to be the owner and/or operator of the Facility.

57.     At all times relevant to this Complaint, the Facility has had the potential to emit more than 100 tons per year of pollutants subject to regulation under the Act, including, but not limited to, $NO_X$ and $SO_2$.

58.     At all times relevant to this Complaint, the Facility was and is a fossil-fuel-fired steam electric plant of more than 250 million BTU per hour heat input.

59.     At all times relevant to this Complaint, the Facility was a "major emitting facility" and a "major stationary source," within the meaning of the Act and the Indiana SIP for $NO_X$ and $SO_2$.

60.     At all times relevant to this Complaint, the Facility was a "new source," a "stationary source" and an "affected facility" within the meaning of the NSPS requirements of the Act.

## FIRST CLAIM FOR RELIEF
(PSD and Nonattainment NSR Violations)

61.     Paragraphs 1 through 60 are realleged and incorporated herein by reference.

62.     From approximately March 25, 2011 to June 19, 2011, Defendant replaced various boiler and turbine components at Unit 1 of the Facility, according to IPL's March 23, 2011 "Spring 2011 Outage" pre-project notification letter to IDEM.  Those activities involved physical changes and/or changes in the method of operation that constitute a multi-million dollar single modification and/or multiple modifications as described in EPA's NOV dated February 5, 2016 and in Defendant's March 23, 2011 pre-notification letter to IDEM.  Those physical changes and/or changes in the method of operation were one or more "major modifications," as defined in the CAA, federal regulations, and Indiana SIP, on Unit 1.  The major modifications should have been expected to and/or actually did result in a significant net emissions increase of $SO_2$, as defined in the federal regulations and/or the Indiana SIP, by enabling and causing Unit 1 to burn more coal and release greater amounts of $SO_2$ into the atmosphere on an annual basis.

63.     Defendant did not comply with the PSD requirements in the Act and the Indiana SIP with respect to the major modifications and subsequent operations at Unit 1.  Among other things, Defendant: (i) undertook such major modifications without first obtaining a PSD permit for the construction and operation of the modified unit; (ii) undertook such major modifications without undergoing a BACT determination in connection with the major modifications; (iii) undertook such major modifications without installing BACT for control of $SO_2$ emissions; (iv) failed to operate BACT for control of $SO_2$ emissions pursuant to a BACT determination; (v) failed to operate in compliance with BACT emission limitations, including limitations that are no less stringent than applicable standards under Section 111 of the CAA; and (vi) operated the unit after undergoing an unpermitted major modification.

64.     From approximately October 11, 2013 to January 30, 2014, Defendant replaced various boiler and turbine components at Unit 2 of the Facility, according to IPL's October 10, 2013 "Fall 2013 Outage" pre-project notification letter to IDEM.   Those activities involved physical changes and/or changes in the method of operation that constitute a multi-million dollar single modification and/or multiple modifications as described in EPA's NOV dated February 5, 2016 and in Defendant's Fall 2013 pre-notification letter to IDEM.  Those physical changes and/or changes in the method of operation were one or more "major modifications," as defined in the CAA, federal regulations, and Indiana SIP, on Unit 2.  The major modifications should have been expected to and/or actually did result in a significant net emissions increase of $SO_2$, NOx, $H_2SO_4$ and PM, as defined in the federal regulations and/or the Indiana SIP, by enabling and causing Unit 2 to burn more coal and release greater amounts of $SO_2$, NOx, $H_2SO_4$ and PM into the atmosphere on an annual basis.

65.     Defendant did not comply with the PSD and Nonattainment NSR requirements in the Act and the Indiana SIP with respect to the major modifications and subsequent operations at Unit 2.  Among other things, Defendant: (i) undertook such major modifications without first obtaining a PSD permit and/or Nonattainment NSR permit for the construction and operation of the modified unit; (ii) undertook such major modifications without undergoing a BACT and/or LAER determination in connection with the major modifications; (iii) undertook such major modifications without installing BACT for control of NOx emissions and LAER for control of $SO_2$ emissions; (iv) failed to operate BACT for control of NOx, $H_2SO_4$ and PM emissions pursuant to a BACT determination and LAER for control of $SO_2$ emissions pursuant to a LAER determination; (v) failed to operate in compliance with BACT and/or LAER emission limitations, including limitations that are no less stringent than applicable standards under

Section 111 of the CAA; and (vi) operated the unit after undergoing an unpermitted major modification.

66.     Defendant has violated and continues to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a), the federal PSD and/or Nonattainment NSR regulations, and/or the Indiana SIP.  Unless restrained by an order of this Court, these violations will continue.

67.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject Defendant to injunctive relief and a civil penalty of up to the amounts set forth in Paragraph 53 above per day for each violation.

**SECOND CLAIM FOR RELIEF**
(Opacity Violations)

68.     Paragraphs 1 through 67 are realleged and incorporated herein by reference.

69.     At all relevant times herein, Units 3 and 4 of the Facility are "affected facilities" within the meaning of NSPS, 40 C.F.R. §§ 60.2, 60.40, because each of those units is a steam generating unit that has a heat input capacity from fuels combusted in the steam generating unit of greater than 73 MW.  As such, Units 3 and 4 are subject to the requirements of NSPS Subpart D, 40 C.F.R. § 60.40 *et seq*.

70.     At all relevant times herein, NSPS Subpart D required that Defendant not cause to be discharged into the atmosphere, from Units 3 and 4, gases which exhibit greater than 20 percent opacity on a 6-minute average, except for one 6-minute period per hour of not more than 27% opacity.  40 C.F.R. § 60.42(a)(2).  Those opacity requirements are incorporated in the Facility's Title V Permit.

71.     At all relevant times herein, Units 1 through 4 are subject to the opacity requirements of the Indiana SIP.  The Indiana SIP requires that Defendant not cause to be

discharged into the atmosphere, from Units 1 through 4, opacity that exceeds an average of 40 percent in any one six-minute averaging period, and that exceeds 60 percent for more than a cumulative total of 15 minutes in a six-hour period.  326 IAC 5-1-2.  Those opacity requirements are incorporated in the Facility's Title V Permit, except that Conditions D.1.2 and D.2.4 of the Permit provide an exception to the 40% limit, known as a Temporary Alternative Opacity Limitation, which applies during designated startup and shutdown periods as allowed under 326 IAC 5-1-3.

72.     On numerous occasions from 2011 through 2015, gases exhibiting greater than 40 percent opacity on a 6-minute average were discharged from Units 1 and 2 of the Facility into the atmosphere in violation of the Indiana SIP and the Facility's Title V Permit.

73.     On numerous occasions from 2011 through 2015, gases exhibiting greater than 20 percent opacity on a 6-minute average were discharged from Units 3 and 4 of the Facility into the atmosphere in violation of NSPS Subpart D, the Indiana SIP and the Facility's Title V Permit.

74.     On a number of occasions during July 2015, separate from the occasions described in Paragraphs 73 and 74 above, gases exhibiting greater than 40 percent opacity on a 6-minute average were discharged from Unit 3 of the Facility into the atmosphere in violation of NSPS Subpart D, the Indiana SIP and the Facility's Title V Permit.

75.     For approximately 5 months during 2015, IPL operated its sulfuric acid mist ($H_2SO_4$) mitigation systems intermittently.  During that time, IPL failed to operate its $H_2SO_4$ mitigation systems at Units 1, 2 and 4 for as many as 500-600 hours while the boilers at those units were operating.  Based on a reasonable opportunity for further investigation or discovery, IPL's intermittent operation of its $H_2SO_4$ mitigation systems, including its failure to operate the

$H_2SO_4$ mitigation systems for as many as 500-600 hours while the corresponding Facility boilers were operating, caused or contributed to a number of the opacity violations identified in Paragraphs 72 through 74 above.

76.     Based on a reasonable opportunity for further investigation or discovery, unless restrained by the Court those opacity violations will continue.

77.     As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Defendant is liable for injunctive relief and the assessment of civil penalties up to the amounts set forth in Paragraph 53 above per day for each violation.

### THIRD CLAIM FOR RELIEF
(SO$_2$ Emissions Violations)

78.     Paragraphs 1 through 77 are realleged and incorporated herein by reference.

79.     At all relevant times, the NSPS at 40 C.F.R. Part 60, Subpart D, prohibited IPL from causing to be discharged into the atmosphere from the Facility any gases that contain $SO_2$ in excess of 1.2lb/MMBtu derived from solid fuel or solid fossil fuel and wood residue.  40 C.F.R. § 60.43(a)(2).  See also 326 IAC 12 and the Facility's Title V Permit, Sections D.2.2(b)(2).

80.     On numerous occasions from 2011 through 2015, $SO_2$ emissions from the Facility's Units 3 and 4 exceeded 1.2lb/MMBtu in violation of the NSPS requirements of the Act, the Indiana SIP and the Facility's Title V Permit.

81.     Based on a reasonable opportunity for further investigation or discovery, IPL bypassed its $SO_2$ controls for extended periods of time from 2011 through 2015, causing or contributing to the excess emissions leading to the violations alleged in Paragraph 80 above.

82.     Based on a reasonable opportunity for further investigation or discovery, unless restrained by the Court those violations will continue.

83.     As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Defendant is liable for injunctive relief and the assessment of civil penalties up to the amounts set forth in Paragraph 53 above per day for each violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

A.     Assess against Defendant a civil penalty, and enter judgment against Defendant and in favor of the United States and the State of Indiana, in an amount up to the statutory maximum penalties per day of violation authorized by the CAA as amended and as set forth in Paragraph 53 above;

B.     Award the United States and the State injunctive relief pursuant to Sections 113(b) and 167 of the CAA, 42 U.S.C. §§ 7413(b) and 7477, and IC 13-3-1-1; and

C.     Grant such other relief as this Court may deem just and proper.

Respectfully submitted,

FOR THE UNITED STATES

JONATHAN D. BRIGHTBILL
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


s/Arnold S. Rosenthal
ARNOLD S. ROSENTHAL
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources
Division
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-3446

SHELESE EMMONS WOODS
Civil Chief
Office of the United States Attorney
U.S. District Court for the Southern District of
Indiana


OF COUNSEL:

SABRINA ARGENTIERI
Attorney-Advisor
U.S. Environmental Protection Agency

LOUISE GROSS
Associate Regional Counsel
U.S. Environmental Protection Agency, Region 5


FOR THE STATE OF INDIANA

OFFICE OF THE INDIANA ATTORNEY
GENERAL

s/Zachary D. Price
ZACHARY D. PRICE
KELLY S. EARLS
Deputy Attorneys General
Office of the Indiana Attorney General
302 W. Washington Street, IGCS 5th Floor
Indianapolis, IN 46204

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 31st day of August, 2020, a copy of the foregoing *Complaint* was filed electronically using the Court's ECF filing system.  Service of this filing will be sent via electronic mail to counsel for IPL, as per Defendant's permission, as follows:

> Samuel Boxerman
> Sidley Austin LLP
> 202-736-8547
> sboxerman@sidley.com

> s/Arnold S. Rosenthal
> Arnold S. Rosenthal